JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| COLLEEN MCGINNIS | STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY |

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    King
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esquire
Console Mattiacci Law LLC, 1525 Locust Street, 9th
Floor, Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42. U.S.C. §2000e, et. seq. ("Title VII"); 29 U.S.C. §2601, et seq. ("FMLA"), 43 P.S. §951, et seq. ("PHRA").
Brief description of cause:
Plaintiff brings this action against her former employer for wrongful termination.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE
January 17, 2021

SIGNATURE OF ATTORNEY OF RECORD
*Katherine C. Oeltjen*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ King of Prussia, PA 19406 _____

Address of Defendant: _____ 2401 Utah Avenue, #800, Seattle, WA 98314 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/17/2021  /s/ Katherine C. Oeltjen  318037
_____   _____   _____
                        *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

*A.* *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

*B.* *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Katherine C. Oeltjen, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: 1/17/2021  /s/ Katherine C. Oeltjen  318037
_____   _____   _____
                        *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| COLLEEN  MCGINNIS | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY | | |
| Defendant. | : | NO. |
| DEFENDANT | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                     (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                        (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (X)

| | | |
|---|---|---|
| January 17, 2021 | / /s/ Katherine C. Oeltjen | Katherine C. Oeltjen |
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| 215-545-7676 | 215-565-2852 | oeltjen@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying the track that plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLEEN MCGINNIS,<br>KING OF PRUSSIA, PA 19406<br><br>   Plaintiff,<br><br> v.<br><br>STARBUCKS CORPORATION d/b/a<br>STARBUCKS COFFEE COMPANY<br>2401 Utah Avenue<br>Seattle, WA 98314<br><br>   Defendant. | CIVIL ACTION NO.:<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Colleen McGinnis ("Plaintiff"), a ten (10) year employee of Defendant who served as a Store Manager for a high-volume location, was wrongfully terminated by Defendant, Starbucks Corporation d/b/a/ Starbucks Coffee Company ("Defendant"), shortly after becoming pregnant, taking a maternity leave and complaining of pregnancy discrimination. Before informing Defendant of her pregnancy and complaining of pregnancy discrimination, Plaintiff had never been told that her performance as a Store Manager was deficient or that her job was in any jeopardy. Plaintiff now brings claims against the Defendant to Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. §2000e, *et. seq.* ("Title VII"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

### II. PARTIES

1. Plaintiff is an individual and citizen of the Commonwealth of Pennsylvania. She resides in King of Prussia, Pennsylvania.

1

2.      Plaintiff is female.

3.      Defendant Starbucks Corporation d/b/a Starbucks Coffee Company is organized under the laws of the State of Washington with a principal place of business at 2401 Utah Avenue, Seattle Washington.

4.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5.      At all times material hereto, Plaintiff worked for Defendant out of its stores throughout the Commonwealth of Pennsylvania, including without limitation, locations in West Chester and Exton, Pennsylvania.

6.      At all times material hereto, Defendant employed more than fifteen (15) employees.

7.      At all times material hereto, Defendant acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

8.      At all times material hereto, Defendant acted as employers within the meaning of the statutes which form the basis of this matter.

9.      At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this matter.

## III.    JURISDICTION AND VENUE

10.     The causes of action which form the basis of this matter arise under Title VII, the FMLA and the PHRA.

11.     The District Court has jurisdiction over Count I (Title VII) and Count II (FMLA) pursuant to 28 U.S.C. §1331.

12.     The District Court has jurisdiction over all Counts pursuant to 28 U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and as there is complete diversity of citizenship as Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of Washington.

13.     Venue is proper in this District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f).

14.     On or about June 9, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination and retaliation alleged herein. The Charge of Discrimination was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the EEOC Charge (with personal identifying information redacted).

15.     On or about October 21, 2020 the EEOC issued the Plaintiff a Notice of Right to Sue for her Charge of Discrimination.  Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

16.     Upon information and belief, the EEOC took the lead in "investigating" Plaintiff's Charge consistent with the EEOC/PHRC cross-filing agreement. Consistent with that agreement, the PHRC waives its rights to investigate Plaintiff's Charge.

17.     The Plaintiff did not request the Right to Sue and the EEOC issued the Right to Sue *sua sponte*.

18.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

3

## IV.   FACTUAL ALLEGATIONS

19.    Plaintiff was hired by Defendant in or about July, 2007 as a Barista.

20.    She briefly left Defendant in 2008 and returned in 2010.

21.    Amid her strong performance, Plaintiff was promoted several times by Defendant from Barista to Shift Supervisor and then to Assistant Store Manager.

22.    In or about July, 2016, Plaintiff was promoted to Store Manager by her then District Manager, Brian Dragone ("Dragone").

23.    As Store Manager, Plaintiff was responsible for managing a store that averaged approximately $ 2.5 million in sales annually. She was charged with managing personnel and staffing, waste management, and inventory.

24.    By 2018, Plaintiff was managing Defendant's High Street, West Chester, Pennsylvania location. She reported to Maddie Houseman ("Houseman") who in turn reported to Marcus Eckensberger ("Eckensberger").

25.    At the High Street location, Plaintiff managed a team of eighteen (18) employees and was routinely used by Defendant as a resource for training other Store Managers amid her exemplary performance. She was often utilized by Defendant as a "mentor" to new Store Managers and asked to show them how to perform the job well.

26.    Plaintiff consistently performed her duties in an exemplary manner and took steps to ensure she was an active "team player" within the District.  By way of example, and without limitation: (a) Plaintiff routinely received positive performance evaluations as Store Manager; (b) Plaintiff created and implemented a Coffee Masters Training program within the District and worked with employees ("Partners") throughout the District to teach them about coffee culture,

coffee growing and coffee processing; and (c) Plaintiff organized and judged the District's Barista Championship for multiple years.

27.     On or about October 1, 2018, Trina Horton ("Horton"), District Manager became Plaintiff's supervisor.

28.     Shortly thereafter, Horton asked Plaintiff to transfer to the Exton, Pennsylvania store.

29.     The Exton store was a higher volume store than the High Street location.

30.     Plaintiff agreed to the transfer.

31.     During the same conversation, Plaintiff told Horton that she was pregnant.

32.     Horton asked Plaintiff about her due date.

33.     Plaintiff asked Horton to keep the information about her pregnancy confidential as it was very early in the pregnancy and she had not widely shared news of her pregnancy.

34.     As soon as Horton learned that Plaintiff was pregnant, she subjected Plaintiff to unwarranted criticism and micromanagement of her performance. By way of example, and without limitation, Horton would criticize Plaintiff's store and, by extension, Plaintiff's performance in ways that were false or about which she could not have any knowledge because Horton did not visit the store with any regularity to observe the conditions of the store.

35.     Horton made numerous comments about Plaintiff's pregnancy to Plaintiff's subordinates and co-workers, including calling Plaintiff "hormonal," discussing pregnancy cravings and telling Plaintiff that she should have a "vaginal birth."

36.     Horton's comments made Plaintiff feel embarrassed and uncomfortable.

37.     Plaintiff's direct reports asked Plaintiff why Horton was treating her more harshly than others as they had noticed Horton's poor treatment of Plaintiff.

38.     Amid Horton's treatment of Plaintiff, she drafted an action plan for herself to document her efforts to meet Horton's expectations.

39.     Plaintiff's store, through no fault of Plaintiff's, was experiencing serious staffing shortages that impacted the ability of the store to meet various items in the action plan.

40.     Plaintiff asked Horton for support in addressing the staffing shortages as ensuring appropriate staffing at all stores in the District is part of Horton's job.

41.     Horton sent one Assistant Store Manager, who was still in training, to the store to "assist" Plaintiff.

42.     Instead of that employee assisting Plaintiff, Plaintiff had to spend extra time training the employee, resulting in additional work for Plaintiff rather than less.

43.     Plaintiff often covered gaps in staffing herself, working long weeks outside the normal scope of scheduled hours.

44.     To meet Horton's increasing demands, Plaintiff worked lengthy shifts without breaks, remaining on her feet for additional hours while her pregnancy continued.

45.     Plaintiff suffered from gestational diabetes and amid her fear of Horton's intensifying micromanagement, Plaintiff worked shifts instead of attending to necessary medical testing such as glucose monitoring.

46.     In or about early June, 2019, Horton gave Plaintiff a "documented coaching."

47.     Plaintiff had not previously received a documented coaching as a Store Manager.

48.     Approximately two weeks later, the day prior to the start of Plaintiff's maternity leave, Horton called Plaintiff into the storage room of the Exton store. Horton told Plaintiff she had heard that she was "upset" about the documented coaching.

49.     Plaintiff told Horton that it was difficult to be covering so many shifts and working so much while pregnant as a result of the staffing shortages that the District was failing to assist her in resolving.

50.     In response, Horton told Plaintiff to ask her for help if she needed it.

51.     Plaintiff was on maternity leave from July 1, 2019 to October 15, 2019.

52.     The maternity leave was considered, consistent with Defendant's policies, leave under the Family Medical Leave Act.

53.     During Plaintiff's maternity leave, Plaintiff's job was performed by a male, non-pregnant employee.

54.     During Plaintiff's maternity leave, Horton promoted several employees into Assistant Store Manager and/or other leadership positions.

55.     Horton's hiring and promotions resulted in an excessive number of management level employees when also including Plaintiff in store headcount.

56.     One day after Plaintiff returned from maternity leave, Horton came to the Exton store and subjected Plaintiff to unwarranted criticism. Horton told Plaintiff that three months of the store being managed by someone else was not enough time to "fix it."

57.     Horton revoked the Exton store's status as a "training store."

58.     Horton told Plaintiff she would no longer be allowed to train new managers.

59.     Horton also made Plaintiff feel uncomfortable about needing to pump breast milk during her shifts and did not support Plaintiff in ensuring that Plaintiff had a private area to pump on her breaks.

60.     On or about November 15, 2019, one month after Plaintiff returned from maternity leave, Horton told Plaintiff by telephone that she was being placed on a performance improvement plan or ("PIP").

61.     Horton told Plaintiff that she would have ninety (90) days to improve her performance or she would be fired.

62.     Horton did not actually present Plaintiff with a PIP or provide her any written documentation relating to any performance improvement during the discussion.

63.     Plaintiff told Horton that she was struggling as a new mom and working on very little sleep amid her lengthy work weeks covering persistent staff shortages.

64.     In response, Horton stated that Plaintiff was a "groovy chick" but that she needed to be placed on a PIP.

65.     Plaintiff called Partner Resources and told them that she was being placed on a PIP within weeks of her return for maternity leave and that Defendant had made multiple errors related to her pay and benefits while out on leave.

66.     Plaintiff also shared with Partner Resources that Horton had not been supportive of Plaintiff's needs to pump breast milk during her shift and that Horton had indicated to Plaintiff that she was uncomfortable with Plaintiff's need to pump at work.

67.     Partner Resources told Plaintiff, without investigation, that it was "OK" for her to be placed on a PIP right after her maternity leave.

68.     Partner Resources also told Plaintiff that she was entitled to purchase materials to ensure that a store stock room could have a private area for pumping.

69.     Horton did not give Plaintiff the PIP until December 23, 2019.

70.   By placing Plaintiff on a PIP on that date, Horton guaranteed that Plaintiff would not receive the quarterly bonus that she had earned.

71.   The PIP contained unreasonable goals and expectations, particularly in light of the extreme staffing shortages.

72.   While Plaintiff was on leave, neither Horton nor Plaintiff's replacement, had meaningfully addressed the staffing shortages.

73.   The PIP further contained information related to issues that persisted or arose during Plaintiff's maternity leave and while another Store Manager was responsible for the Exton Store.

74.   The male Store Manager who replaced Plaintiff during her leave was not held to the same expectations that Horton was holding Plaintiff.

75.   In order to meet each and every element of the PIP, Plaintiff worked extra hours and performed the job responsibilities of multiple positions. Plaintiff answered work-related texts at all hours and worked well in excess of what Defendant requires or expects of Store Managers.

76.   Horton, despite it being her job to do so, offered no support in addressing staffing shortages. Further, Horton criticized Plaintiff when she prioritized addressing staffing shortages to free up time for Plaintiff to address the items in the PIP.

77.   Horton did not provide Plaintiff any routine feedback on the PIP and rarely visited the Exton store.

78.   On or about February 20, 2020, during an offsite meeting called by Horton, Horton tried to convince Plaintiff to quit. She threatened Plaintiff with a poor reference if she remained with Defendant and did not complete the PIP to Horton's satisfaction.

79.     Horton told Plaintiff that she did not think Plaintiff could complete the PIP successfully.

80.     When Plaintiff refused to quit, Horton told Plaintiff that she was "pulling" another employee from the Exton store, resulting in further staffing shortages.

81.     Plaintiff understood that Horton's goal in removing staff was to make it even more difficult for Plaintiff to complete the PIP.

82.     Plaintiff understood that Horton wanted Plaintiff to fail the PIP.

83.     Horton was angry that Plaintiff would not quit.

84.     On or about February 21, 2020, Plaintiff telephoned Partner Resources again and complained of pregnancy discrimination. Plaintiff specifically complained of Horton's discriminatory conduct and her actions in connection with Plaintiff's pregnancy, maternity leave and return from maternity leave.

85.     Plaintiff further complained that Horton was expecting Plaintiff to work hours more than what was expected of Store Managers, knowing that Plaintiff had a newborn baby at home.

86.     Plaintiff told Partner Resources that she was not going to quit.

87.     Partner Resources did not conduct any meaningful investigation of Plaintiff's complaints of pregnancy discrimination.

88.     Following Plaintiff's second call with Partner Resources regarding Horton's discriminatory conduct, Horton suddenly made suggestions and aided in providing additional staffing to cover the Exton's stores shifts.

89.   Plaintiff understood that Partner Resources had contacted Horton and told her that Plaintiff had complained about Horton's treatment of her in connection with her pregnancy and maternity leave.

90.   On March 3, 2020, before the ninety (90) days of the PIP were "up," Horton told Plaintiff that it was "time to talk about" Plaintiff "leaving Starbucks."

91.   Horton told Plaintiff that she was not completing her job responsibilities or meeting the culture or "values" of Starbucks.

92.   Plaintiff's termination was effective immediately.

93.   Before becoming pregnant, taking maternity leave and complaining of pregnancy discrimination, Plaintiff had never been told that she was not completing her job responsibilities or meeting the culture and values of Starbucks; nor had Plaintiff ever been told her job was in jeopardy.

94.   Plaintiff was the only Store Manager to take a maternity leave within the District for at least five years, and perhaps longer.

95.   Plaintiff's job duties were performed by a non-pregnant, non-complaining employee following her termination.

96.   Defendant will demote Store Managers to Assistant Store Managers or offer them transfers to lower volume stores when Defendant perceives performance "issues" with certain employees.

97.   Defendant did not discuss any option of keeping her job and moving to a lesser position or a lower volume store with Plaintiff at any time.

98.   Defendants stated reason(s) for terminating Plaintiff is pre-textual.

11

99.     Plaintiff's sex/pregnancy was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of Plaintiff, including, without limitation, in connection with placing her on a PIP, denying her a bonus and her termination.

100.    Plaintiff's complaining of sex/pregnancy discrimination was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of Plaintiff, including, without limitation, with placing her on a PIP, denying her a bonus and her termination

101.    The Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

102.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

103.    Defendants retaliated against Plaintiff for taking FMLA leave.

104.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred and may in the future incur a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

105.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

106.    Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

107.   The conduct of Defendant, as set forth above, was outrageous and warrants the imposition of punitive damages against Defendant.

## COUNT I – TITLE VII

108.   Plaintiff incorporates by reference paragraphs 1 through 107 above, as if set forth herein in their entirety.

109.   By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

110.   Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

111.   As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

112.   Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT II—FMLA

113.   Plaintiff incorporates by reference paragraphs 1 through 112 above, as if set forth herein in their entirety.

114.   By committing the foregoing acts against Plaintiff, Defendant has violated the FMLA.

115.   Defendant's conduct was retaliatory.

116.   Said violations were not in good faith, and Defendant did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

117.   The imposition of liquidated damages is warranted.

118.   As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

## COUNT III – PHRA

119.   Plaintiff incorporates by reference paragraphs 1 through 118 above, as if set forth herein in their entirety.

120.   By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

121.   Said violations were intentional and willful.

122.   As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

123.   Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.   Declaring the acts and practices complained of herein to be in violation of Title VII;

b.   Declaring the acts and practices complained of herein to be in violation of the FMLA;

c.   Declaring the acts and practices complained of herein to be in violation of the PHRA;

14

d.      Enjoining and permanently restraining the violations alleged herein;

e.      Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

f.      Awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendant's improper conduct;

g.      Awarding compensatory damages to Plaintiff for past pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered as a result of Defendants' improper conduct;

h.      Awarding punitive damages to Plaintiff;

i.      Awarding liquidated damages to Plaintiff;

j.      Awarding Plaintiff other such damages as are appropriate under Title VII, the FMLA, and the PHRA;

k.      Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

l.      Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACI LAW LLC**

Dated: January 17, 2021                    By:      */s/ Katherine C. Oeltjen*
Katherine C. Oeltjen, Esquire (318037)
Stephen G. Console, Esquire (36656)
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676
*Attorneys for Plaintiff Colleen McGinnis*

15

# EXHIBIT 1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | FEPA<br>**X** EEOC | |

| STATE OR LOCAL AGENCY: PHRC |
|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>Colleen McGinnis | TELEPHONE NUMBER *(Include Area Code)*<br>REDACTED |
|---|---|

| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>King of Prussia, PA 18406 | DATE OF BIRTH<br>REDACTED |
|---|---|---|

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)**

| NAME<br>Starbucks Corporation d/b/a Starbucks Coffee Company | NUMBER OF EMPLOYEES, MEMBERS<br>More than 1,000 | TELEPHONE (Include Area Code)<br>(610) 363-3590 (Exton, PA Store) |
|---|---|---|

| STREET ADDRESS<br>2401 Utah Avenue #800 | CITY, STATE AND ZIP<br>Seattle, WA 98314 | |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>__ Race __ Color **X** Sex __ Religion __ National Origin<br>**X** Retaliation __ Age __ Disability __ Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>Latest Date March 3, 2020 |
|---|---|

**I.     The Particulars Are:**

**1. Relevant Work History**

I was hired by Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks" or "Respondent") in or about July, 2007 as a Barista. Amid my strong performance, I was promoted several times by Respondent from Barista, to Shift Supervisor, and, to Assistant Store Manager. In or about July, 2016, I was promoted to Store Manager by Brian Dragone ("Dragone") (male) District Manager. As Store Manager, I was responsible for managing a store that averaged $2.5 Million in sales per year, including by way of managing personnel and staffing, waste management, and inventory. By 2018, I was working as a Store Manager in Starbucks' High Street store and reporting to Maddie Houseman ("Houseman") (female). Houseman reported to Marcus Eckensberger ("Eckensberger"). I managed a team of approximately eighteen (18) employees.

| **X** I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | ~~NOTARY - (when necessary for State and Local Requirements)~~<br><br>~~I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief.~~ |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct.<br><br>*Colleen McGinnis*<br>Date: 6/9/20     Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day Month, and year) |

Throughout my employment, I performed my duties in a consistently exemplary manner and was an active team player in the region that I was assigned. By way of example only, and without limitation, I routinely volunteered to cover staff shortages at stores other than those I was assigned to and was often asked to mentor Store Managers on behalf of Respondent amid my strong performance. In addition, my store(s) served as a mentoring/training store(s). Only managers with ideal "training stores" that met all company standards were selected to train other Store Managers. In addition, I created and implemented a Coffee Masters Training program within my district, I worked with Respondent's partners across my district in teaching them about coffee culture, coffee growing and coffee processing, and I organized and judged the district's Barista Championship for two years.

2. **Harm Summary**

I believe that Respondent discriminated against me due to my gender (female) and pregnancy and retaliated against me for complaining of sex/pregnancy discrimination. Evidence of discriminatory and retaliatory conduct includes, but is not limited to the following:

A. On or about October 1, 2018, Trina Horton ("Horton") (female), District Manager ("DM") became my supervisor. Horton initially reported to Eckensberger (male) Regional Manager. She later reported to Dominic Alessandrini ("Alessandrini") (male) Regional Manager.

B. Shortly after she started as a District Manager, Horton convened a meeting with the Store Managers who reported to her. During the meeting, in reference to new policy materials from Respondent that referred to characteristics that made a good store manager, I complained that I did not like Starbucks' use of the world "benevolent" because I associated the word with religion.

C. Horton scolded me and told me not to be so negative.

D. Following the meeting, Horton asked me to transfer to the Exton store. The Exton store was higher volume than the store I was previously managing.

E. I agreed to take the higher volume store and, at the same time, told Horton that I was pregnant. Horton acknowledged my pregnancy and asked when my due date was and I told her. I asked her to keep the information confidential as it was very early in my pregnancy and I had not told many people about my pregnancy.

**EEOC Charge of Discrimination**
**Colleen McGinnis v. Starbucks Corporation d/b/a Starbucks Coffee Company**
**Page 3 of 6**

F.  As soon as Horton learned that I was pregnant, she subjected me to unwarranted criticism and micromanagement of my performance. By way of example, Horton would criticize my store, and by extension my performance, in ways that were false and about which she could not have any knowledge because she did not come to my store with any regularity to observe the conditions of the store.

G.  At the same time, Horton made numerous comments about my pregnancy to my subordinates and co-workers, including calling me "Hormonal," wanting to discuss pregnancy cravings and telling me that I should have a "vaginal birth" in front of other employees, embarrassing me and making me uncomfortable.

H.  Employees reporting to me noticed that Horton treated me more harshly than others and asked me why she was treating me differently.

I.  Amid Horton's treatment of me, I drafted an action plan for myself in an effort to document my efforts to meet her expectations. At the same time, my store was experiencing staffing shortages that seriously impacted the store's ability to complete all items on the action plan.

J.  Despite the well-known staffing shortages, the only support Horton provided to my store was to send an Assistant Store Manager who had yet to complete her training to help. Because of the Assistant Store Manager's lack of training, I had to spend extra time training her on the job and checking her work, resulting in more work for me, rather than less.

K.  Amid Horton's micromanagement of my performance and my desire to exceed her expectations despite extreme staffing shortages, I worked lengthy shifts without breaks. I suffered from gestational diabetes and I worked instead of attending necessary medical testing and remained on my feet without adequate breaks or snacks in an effort to please Horton and to keep my job.

L.  In early June, 2019, Horton gave me a documented coaching. Approximately two weeks later, the day prior to the start of my maternity leave, Horton called me into the Exton store storage room and told me she had heard I was "upset" about the coaching. She told me at that time it was for cleanliness of my store. I told Horton that it was difficult to be working so much while pregnant.

M.  Prior to notifying Respondent that I was pregnant, I had never received a documented coaching as a Store Manager.

N.  I took maternity leave from July 1, 2019 to October 15, 2019. During my maternity leave, Horton selected a non-pregnant Store Manager to perform my job duties.

O.  At the same time, while I was on maternity leave, Horton hired or promoted several people into Assistant Store Manager and/or other leadership positions. I understood her to be training them to take my place as the staff she hired/promoted exceeded the number of open slots for management level positions within the district so long as I remained in my job.

P.  On or about October 16, 2019, one day after I returned from leave, Horton came to the Exton store. During the meeting, Horton gave me unwarranted criticism about my performance and told me that three months of the store being managed by someone else wasn't enough time to "fix it."

Q.  Horton also told me that I would no longer be allowed to train new managers or have the Exton store be a training store.

R.  On or about November 15, 2019, when I had been back from maternity leave for only one month, Horton told me I had ninety (90) days to improve my performance or I would be terminated and that she was putting me on a performance improvement plan or ("PIP").

S.  Horton did not actually present me with any written documentation or a PIP on November 15, 2019.

T.  I told Horton that I was struggling a bit as a new mom to find work-life balance and that I was working large numbers of hours on little sleep amid persistent staffing shortages.

U.  Horton told me she thought I was a "groovy chick" but that she needed to present me with the PIP.

V.  Given my recent maternity leave and Horton's threat of termination, I called Partner Resources and complained that Horton was placing me on a PIP within weeks of my return from maternity leave. I also detailed errors in my benefits and pay by Respondent during my maternity leave that resulted (through no fault of my own) in a temporary loss of benefits in contrast to Respondent's policies.

W.  Partner Resources told me it was "OK" for me to be placed on a PIP despite its proximity to my maternity leave.

X.  Horton did not give me a PIP until December 23, 2019.

Y.  The PIP contained unreasonable goals and expectations given the extreme staffing shortages in the Exton store.

**EEOC Charge of Discrimination**
**Colleen McGinnis v. Starbucks Corporation d/b/a Starbucks Coffee Company**
**Page 5 of 6**

Z.  The issues identified on the PIP existed during my three months of maternity leave, but the non-pregnant Store Manager (male) who performed my work while on leave was not held to the same expectations nor was he placed on a PIP.

AA.  I worked diligently to achieve each item on the PIP despite staffing shortages that were well known to Horton, resulting in me working extra hours and engaging in job responsibilities of multiple people and positions. I answered work-related text messages at all hours and worked well in excess of what Respondent expected for its Store Managers.

BB.  Horton offered no support, despite it being within her job responsibilities to do so, in addressing staffing shortages and was unhappy with me when I prioritized resolving the staffing shortages so that I could then have the time to attend to the items in the PIP.

CC.  During the PIP, Horton did not provide me with routine feedback or support my efforts to meet my goals and rarely visited my store.

DD.  On or about February 20, 2020, during an offsite meeting called for by Horton, she tried to convince me to quit, threatening me with a poor reference if I remained and didn't complete my PIP to her satisfaction. Horton told me that she didn't think I could successfully complete the PIP.

EE.  When I didn't agree to quit, Horton told me that she was pulling another employee from my store who had been supporting me while experiencing extreme staffing shortages.

FF.  In removing staff from my store, Horton made the task of completing the PIP substantially more difficult.

GG.  I understood Horton to be trying to force me to quit.

HH.  On or about February 21, 2020, I telephoned Partner Resources and complained about Horton's actions in connection with my pregnancy, maternity leave and return. I further complained that I was working fifty (50) hour weeks with a newborn at home but that I was afraid to lessen my schedule or take any time off because of Horton's treatment of me.

II.  I told Partner Resources that I was not going to quit my job.

JJ.  Following my call with Partner Resources, Horton suddenly, and for a short time, made suggestions and aided in providing additional staffing to cover my store's shifts.

KK.  I understood that Partner Resources had contacted Horton and told her that I had complained about her treatment of me in connection with my pregnancy and maternity leave.

**EEOC Charge of Discrimination**
**Colleen McGinnis v. Starbucks Corporation d/b/a Starbucks Coffee Company**
**Page 6 of 6**

LL.   On March 3, Horton told me it was "time to talk about [me] leaving Starbucks." Horton told me that I wasn't completing my job responsibilities or meeting the culture and values of Starbucks.

MM.   My termination was effective immediately.

NN.   Prior to becoming pregnant and taking a maternity leave, I had never been told that I wasn't completing my job responsibilities or meeting the culture and values of Starbucks nor had I ever been warned that my job was in jeopardy.

OO.   To the best of my knowledge, after my termination, my job duties were performed by a female employee who had not recently been pregnant or taken a maternity leave.

PP.   No Store Manager, other than me, has taken a maternity leave from within my district within the past five years (and perhaps more).

## II. <u>Respondent's Stated Reason</u>

Respondent has not provided a legitimate, non-discriminatory reason for the discriminatory and retaliatory treatment to which I have been subjected, including, but not limited to, subjecting me to a hostile work environment and terminating me. The stated reason for my termination my position, is pre-textual.

## III. <u>Statutes and Basis of Allegations</u>

I believe that Respondent has discriminated against me in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended 43 P.S. §951, et. seq. ("PHRA").

# EXHIBIT 2

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Colleen McGinnis**
REDACTED
**King Of Prussia, PA 19406**

From: **Cleveland Field Office**
**EEOC, AJC Fed Bldg**
**1240 E 9th St, Ste 3001**
**Cleveland, OH 44199**

| | | |
|---|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **532-2020-02078** | **Denise DeGennaro,** Investigator | **(216) 306-1116** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Karen McDonough*

**Karen McDonough,**
**Acting Director**

10/21/2020

*(Date Mailed)*

Enclosures(s)

cc:
**Jeffrey Jones**
**Shareholder**
**STARBUCKS**
**Littler Mendelson, PC**
**2301 McGee Street, Suite 800**
**Kansas City, MO 64108**

**Danielle Buccieri**
**CONSOLE MATTIACCI LAW, LLC**
**1525 Locust Street**
**9th Floor**
**Philadelphia, PA 19102**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*